Steven M. Jodlowski (Bar No. 239074)
**DICELLO LEVITT LLP**
4747 Executive Drive, Suite 240
San Diego, California 92121
Tel.: 619-923-3939
stevej@dicellolevitt.com

Adam J. Levitt*
John E. Tangren*
Jeremy Levine-Drizin*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Tel.: 312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
jlevinedrizin@dicellolevitt.com

* *Pro hac vice* motions to be filed

*Counsel for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT FOWLER, SCOTT SOMERS, JAMES CONNOLLY, and JOE WEBB, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SONOS, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Scott Fowler, Scott Somers, James Connolly, and Joe Webb (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or the "Classes," as more fully defined below), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation of counsel, allege as follows:

## NATURE OF THE CASE

1.    Plaintiffs seek damages and equitable relief, individually and on behalf of all other Class members, for Sonos, Inc.'s ("Sonos" or the "Company") sale of the Arc, a soundbar that is subject to a defect – a defect that has colloquially become known as the "Pop of Death" – that can cause the Arc to unexpectedly make a loud "bang" sound when used with Dolby Atmos, an advanced surround-sound technology.

2.    Sonos bills and markets the Arc as a high-end "soundbar," a bar-shaped speaker device that is often placed beneath a television set to supplant the television's internal speaker system with higher quality sound.

3.    Plaintiffs purchased their Arcs because of the device's capacity to support Dolby Atmos, an advanced surround-sound technology.

4.    Sonos aggressively markets the Arc's compatibility with the Dolby Atmos sound system in its online store. It promises potential buyers that they will experience "breathtakingly realistic spatial audio" that "immerse[s] you in a multidimensional soundstage." For instance, Sonos's marketing claims, "You'll hear planes as if they're flying overhead, sense footsteps moving across the room, and feel the music swell all around you."

5.    What Sonos has failed to disclose, however, is that Arc users, including Plaintiffs and the other Class members, frequently experience a phenomenon whereby the Arc will emit an extremely loud, startling, and explosive bang resembling a gunshot, which is then sometimes followed by a series of smaller pops.

Class Action Complaint

6.      Internet forums abound with comments from frustrated Arc users reporting this problem, and recently, several articles in widely-circulated online technology magazines have also appeared documenting the phenomenon.

7.      Plaintiffs and other Class members have sought repair to their Arcs through Sonos's established troubleshooting channels. None of these efforts has proven successful because Sonos has failed to make available any repair to resolve this issue.

8.      To date, the only way Plaintiffs and the other Class members can ensure that they will not experience the Pop of Death while using the Arc is to manually disable the product's Dolby Atmos function – one of the main reasons for purchasing the Arc rather than a less expensive soundbar.

9.      In its marketing materials for the Arc, Sonos does not mention anything about the Pop of Death defect, and neither Plaintiffs nor the other Class members were aware of it at the time of purchase.

10.     Had Plaintiffs and the other Class members known about the Pop of Death, they would not have purchased the Arc, or they would have paid substantially less for it.

**JURISDICTION AND VENUE**

11.     This Court has diversity jurisdiction over this action under 28 U.S.C. §1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiffs and one or more of the other Class members are citizens of different states than Defendant.

12.     This Court has personal jurisdiction over Sonos because it is a California corporation with its corporate headquarters located in this District.

13.     This Court also has personal jurisdiction over Sonos because Sonos has purposefully availed itself of the privilege of doing business within California, including by marketing and selling its products in this State, and exercising jurisdiction over Sonos does not offend traditional notions of fair play and substantial justice.

Class Action Complaint

14. Venue is proper in this District under 28 U.S.C. §1391 because Sonos resides within this District and a substantial part of the events and omission giving rise to Plaintiffs' claims occurred within this District.

**PARTIES**

**A.    Plaintiffs**

**1.    Alabama**

15. Scott Fowler ("Mr. Fowler") is domiciled in Harvest, Alabama.

16. Mr. Fowler owns a Sonos Arc, which he purchased at a Best Buy store for $799 on February 5, 2023.

17. He decided to buy his Arc after watching some reviews for the product on YouTube.

18. Mr. Fowler regrets his purchase, as his Arc emits a "[r]andom loud noise, like a speaker popping."

19. Had Sonos disclosed the Pop of Death defect, Mr. Fowler would not have purchased his Arc, or he certainly would have paid less for it.

**2.    Florida**

20. Scott Somers ("Mr. Somers") is domiciled in Grant-Valkaria, Florida.

21. Mr. Somers owns a Sonos Arc, which he purchased online on November 25, 2020, through the website for QVC, a televised home shopping network.

22. He decided to buy his Arc after seeing advertisements for it on television.

23. Mr. Somers regrets his purchase, as the "sound quality and sound performance" of his Arc is "very poor" and he frequently hears "cracking and popping during cracking."

24. Had Sonos disclosed the Pop of Death defect, Mr. Somers would not have purchased his Arc, or he certainly would have paid less for it.

**3.    Illinois**

25. James Connolly ("Mr. Connolly") is domiciled in Willowbrook, Illinois.

3

26.     Mr. Connolly owns a Sonos Arc, which he purchased at a Best Buy store for $899 on October 26, 2021.

27.     He decided to buy his Arc after speaking with friends who owned it and reading reviews of the product on the internet.

28.     He also visited the Sonos website prior to purchasing and saw official Sonos advertisements for the Arc.

29.     Mr. Connolly regrets his purchase, as whenever he raises his sound over a certain level, "there is a really loud crack and pop" and his speaker "times out" when watching "Dolby Atmos shows and movies" or playing "Spatial Audio music."

30.     Had Sonos disclosed the Pop of Death defect, Mr. Connolly would not have purchased his Arc, or he certainly would have paid less for it.

### 4.     Texas

31.     Joe Webb ("Mr. Webb") is domiciled in San Antonio, Texas.

32.     Mr. Webb own a Sonos Arc, which he purchased at a Best Buy store on May 19, 2022.

33.     Mr. Webb decided to buy his Arc after seeing advertisements for the product on Instagram.

34.     Before purchasing, Mr. Webb thoroughly reviewed the product's specifications and compared them to those of other soundbars on the market.

35.     Mr. Webb regrets his purchase, as his Arc randomly produces "crackling or popping sounds."

36.     Had Sonos disclosed the Pop of Death defect, Mr. Webb would not have purchased his Arc, or he certainly would have paid less for it.

## B.     Defendant

37.     Defendant Sonos, Inc. is a publicly-traded consumer electronics corporation headquartered at 614 Chapala Street, Santa Barbara, California 93101.

38.    While its principal office is located in the United States, Sonos conducts substantial business abroad, selling its products in 60 countries and maintaining corporate offices in the Netherlands, France, and Australia, in addition to three offices in China.

39.    According to the official press release accompanying its most recent quarterly investor report (from August 2023), Sonos's product portfolio includes 20 different devices spanning a "[v]ariety of [p]rice [p]oints."

40.    The most expensive standalone item in its product portfolio is the Arc, which currently retails for $899.

## FACTUAL ALLEGATIONS

41.    The Arc is Sonos's premium smart soundbar.

42.    Customers could begin pre-ordering the Arc in the summer of 2020, for $799.

43.    Since then, the retail price has increased to $899.

44.    In rolling out the product to consumers, Sonos marketed the Arc as setting "a new standard for premium home theater sound" and promised that the device was "[m]ore than a soundbar."[1]

45.    At the time of the product's release, Patrick Spence, Chief Executive Officer of Sonos, stated that the Company's goal with the Arc was to "'make any room you have a television a place you can easily enjoy all of the great streaming video and music that exists today. Arc illustrates our commitment to brilliant sound and premium design, and sets a new standard for soundbars.'"[2]

46.    Sonos promised Arc purchasers that their entire home cinematic experience would be revolutionized: "Eleven high-performance drivers, including two

---

[1]    *Introducing Sonos Arc, the premium smart soundbar*, BUSINESS WIRE (May 6, 2020), https://www.businesswire.com/news/home/20200506005236/en/.

[2]    *Id.*

that are upward firing for 3D audio, produce dramatic clarity, detail, and depth. Tuned in partnership with Oscar-winning mixing engineers, Arc adjusts its sound profile through software, based on the home theater set-up and what's playing, whether stereo, Dolby Audio 5.1, or Dolby Atmos."[3]

47.    Key to Sonos's marketing strategy for the Arc is the product's capacity to run Dolby Atmos, a state-of-the-art surround-sound system developed by Dolby Laboratories that uses advanced technology to simulate a three-dimensional audio experience.

48.    Dolby Atmos is mentioned five separate times on the product's official release summary.[4]

49.    To this day, on the Arc's main page in Sonos's online store, Dolby Atmos is mentioned in the most basic description of the device, right below the product's name and price-tag: "Bring all your entertainment to life and experience breathtakingly realistic spatial audio powered by Dolby Atmos."[5]

50.    Sonos also touts the product's user-friendly compatibility with a range of streaming devices. In the official product release, the Company stated: "Award-winning shows and movies are being streamed in homes around the world, now in even higher resolution sound. Today, more than 25 video streaming services and TV providers are serving Dolby Atmos content, making powerful home theater experiences more accessible in the living room."[6]

51.    Purchasers of the Arc, influenced by these marketing materials, reasonably expected that, when operating as intended, the Arc would provide them with state-of-the-art Dolby Atmos sound.

---

[3]    *Id.*

[4]    *See id*.

[5]    *Arc*, Sonos, https://www.sonos.com/en-us/shop/arc (last visited Oct. 4, 2023).

[6]    *See supra*, n.1.

Class Action Complaint

52. Plaintiffs and the other Class members, however, cannot reliably enjoy the Arc's touted compatibility with Dolby Atmos, because whenever they try to use their devices with Dolby Atmos engaged, they inevitably experience the "Pop of Death."

53. Plaintiffs are far from the only Sonos customers to have experienced this phenomenon.

54. Several online technology magazines have recently published articles documenting the defect.[7]

55. One of the journalists writing these articles, Tom Warren ("Mr. Warren"), has directly experienced the issue in his own home.

56. In his article published in *The Verge*, Mr. Warren wrote:

> I bought a Sonos Arc soundbar and an LG OLED G2 six months ago to use with my Xbox Series X thinking it would be the most convenient way to expand my existing Sonos setup to handle Dolby Atmos audio from apps like Netflix, Apple TV Plus, and Disney Plus. Now, however, my Sonos Arc soundbar sounds like it's exploding with a startling loud bang and a series of audio pops when I try to use Dolby Atmos content. I'm not alone, either. I was shocked to learn that hundreds of Sonos Arc owners have experienced these extremely loud audio pops for nearly three years without a fix.[8]

57. "The reality," Mr. Warren concluded, is that the Arc is a "Dolby Atmos soundbar that can't handle Atmos properly."[9]

---

[7] *See, e.g.*, Scharon Harding, *Sonos has been unable to fix Arc soundbars' "pop of death" for over 2 years*, ARS TECHNICA (Aug. 10, 2023), https://arstechnica.com/gadgets/2023/08/sonos-has-been-unable-to-fix-arc-soundbars-pop-of-death-for-over-2-years/; Tom Warren, *Sonos' $900 Dolby Atmos soundbar has a loud pop issue that's taking years to fix*, THE VERGE (Aug. 10, 2023), https://www.theverge.com/2023/8/10/23824258/sonos-arc-dolby-atmos-problems-loud-audio-pop; Carrie Marshall, *Sonos admits that the Arc has a Dolby Atmos issue but their solution is not great*, TECH RADAR (Aug. 11, 2023), https://www.techradar.com/televisions/soundbars/sonos-admits-that-the-arc-has-a-dolby-atmos-issue-but-their-solution-is-not-unacceptable.

[8] Tom Warren, *Sonos' $900 Dolby Atmos soundbar has a loud pop issue that's taking years to fix*, THE VERGE (Aug. 10, 2023), https://www.theverge.com/2023/8/10/23824258/sonos-arc-dolby-atmos-problems-loud-audio-pop.

[9] *Id.*

Class Action Complaint

58.    Arc owners have also posted video recordings to popular platforms like Twitter and YouTube capturing the Pop of Death defect in action.[10]

59.    The gunshot-like sound is so powerful that it often causes users to assume that something exploded in their speaker, and it also frightens house pets. As Mr. Warren commented in his article, the Pop of Death will leave his miniature dachshund "hiding in fear for the rest of the evening."[11]

60.    Mr. Warren also noted in his article that Sonos community message boards are filled with comments from hundreds of frustrated customers reporting similar encounters with the Pop of Death.[12]

61.    One such frustrated consumer, who penned his comment under the name "samro1094," wrote the following post on the official Sonos Community message board:

> I was playing on my Xbox when the arc suddenly made an extremely loud pop sound and then lost audio completely. The app wouldn't let me adjust the volume and Alexa wake up didn't emit its usual tone. I had to remove the power from the arc and reapply which resumed the audio. I'm concerned that one of the speakers in the arc may have been damaged when this happened. Has anyone had this issue?[13]

62.    Since being posted, this comment from "samro1094" has garnered more than 1,000 replies in a thread that now runs 43 pages.

63.    The bulk of these replies are from other frustrated Arc purchasers who have also experienced the Pop of Death.

---

[10]    *See, e.g.,* Tom Warren (@tomwarren), TWITTER (Aug. 10, 2023, 7:20 AM), https://twitter.com/tomwarren/status/1689642981895327744; Dad and Dex chores, *2022 SONOS ARC sound bar is rubbish and Atmos makes it pop and crackle then die! RANT!*, YOUTUBE (Apr. 18, 2023), https://www.youtube.com/watch?v=lUCIRlScaT8.

[11]    *See supra*, n.8.

[12]    *See, e.g.,* samro1094, *Sonos Arc loud pop then audio loss*, SONOS COMMUNITY (2020), https://en.community.sonos.com/home-theater-229129/sonos-arc-loud-pop-then-audio-loss-6852340.

[13]    *Id.*

Class Action Complaint

64.    In their replies, many of these purchasers express being taken aback by the explosive intensity of the Pop of Death.

65.    A commenter named "fok_1," for example, replied as follows: "The same has been happening to me about 8 to 12 times over the last couple of months. The first two times it happened I thought one of my devices had exploded in my living room."[14]

66.    "D3R3K" had a similar experience: "I got my first scary pop last night at about 12:30 am. Scared the heck out of me. Thought something exploded.[15]

67.    The forum containing this deluge of posts from disgruntled Arc purchasers, "en.community.sonos.com," is an official site paid for and monitored by Sonos.

68.    Many of these posts are *more than two years old*.

69.    With so many users posting about the Pop of Death defect on the official forum, Sonos has been aware of the issue since shortly after it released the Arc into the market.

70.    In addition to surprise at the jarring sound the defect produces, pervading these testimonials is a sense of indignation towards Sonos for failing to address the problem.

71.    "kevinomiconomics," for example, writes:

> I'm going to stop investing anymore in Sonos products and stop recommending them to my friends and family. This issue is easily reproducible by the patterns of hardware described in this thread and only occurs with Sonos products; no other soundbar. Support isn't a priority for Sonos, which is a shame considering how expensive their products are.[16]

---

[14]    fok_1, *Sonos Arc loud pop then audio loss*, SONOS COMMUNITY (2020), https://en.community.sonos.com/home-theater-229129/sonos-arc-loud-pop-then-audio-loss-6852340?postid=16538101#post16538101.

[15]    D3R3K, *Sonos Arc loud pop then audio loss*, SONOS COMMUNITY (2020), https://en.community.sonos.com/home-theater-229129/sonos-arc-loud-pop-then-audio-loss-6852340?postid=16555215#post16555215.

[16]    kevinomiconomics, *Sonos Arc loud pop then audio loss*, SONOS COMMUNITY (2020), https://en.community.sonos.com/home-theater-229129/sonos-arc-loud-pop-then-audio-loss-6852340/index11.html.

Class Action Complaint

72.     "MadDoc" wrote the following:

I might as well add my experience here too.

Been using Sonos products for > 10 years.

I have an Arc, with two Play:1s and a sub hooked up to an LG TV via eARC and use the latest 4K AppleTV for all streaming.

This set up has worked flawlessly for ages. Suddenly about 2 weeks ago I started getting intermittent very loud and increasingly frequent electrical sounding bangs and then loss of audio that was only restored with a reboot.

I disabled Atmos on the AppleTV so it only outputs Dolby 5.1 and the bangs have stopped.

Whilst this is a workaround it's absolutely unacceptable. Why should I settle for suboptimal Dolby 5.1? I paid extra for an Arc (and upgraded my TV to get eARC also) so I could experience the best quality sound.

This is a massive issue and Sonos need to figure this out as a matter of urgency.[17]

73.     "William_61," expressing the frustration of many participants in the thread, posted: "Sonos has been telling us for 3 years that they can't reproduce this Arc Atmos BANG issue in their labs. An issue and topic of probably their largest complaint thread on the Sonos Community ever."[18]

74.     As "Paul Tsang" concisely put it, the Pop of Death defect "totally ruined the whole experience. It's basically buying an Atmos product but then it's not. It's so ridiculous. Someone should provide us an update. It should just be a clear message, able to fix or not?"[19]

---

[17]     MadDoc, *Sonos Arc loud pop then audio loss*, SONOS COMMUNITY (2020), https://en.community.sonos.com/home-theater-229129/sonos-arc-loud-pop-then-audio-loss-6852340?postid=16637450#post16637450.

[18]     William_61, Sonos *Arc loud pop then audio loss,* SONOS COMMUNITY (2020), https://en.community.sonos.com/home-theater-229129/sonos-arc-loud-pop-then-audio-loss-6852340/index37.html.

[19]     Paul Tsang, Sonos *Arc loud pop then audio loss,* SONOS COMMUNITY (2020), https://en.community.sonos.com/home-theater-229129/sonos-arc-loud-pop-then-audio-loss-6852340/index6.html?sort=likes.desc.

Class Action Complaint

75.     Comments like these attest to the fact that, on the community forum and beyond, Sonos has been entirely unhelpful to customers seeking to troubleshoot the problem.

76.     Moreover, since the product's launch more than three years ago, Sonos has been unable to introduce a fix for the defect.

77.     For those who encounter the Pop of Death, Sonos's only recommended workaround is to simply disable the Dolby Atmos setting – *a "solution" that defeats the entire purpose of the device*.

78.     In a statement to *The Verge*, Scott Fink, Sonos's product manager, acknowledged the existence of the problem, but gave no indication that the Company was anywhere near resolving it:

> We are aware that a small percentage of customers have experienced an interoperability issue which is causing a popping sound on Arc. What we know now is that this issue occurs on some Dolby Atmos enabled audio products, including Arc, when connected to certain combinations of streaming devices and TVs while playing Dolby Atmos content.
>
> We are committed to finding the root cause and we're continuing to test for a reliable reproduction of what customers are describing online and in conversations with our support team. We are also engaging our contacts at third party manufacturers to further explore possible solutions. As this is an issue stemming from the way various devices are working together, there are a range of tests our team needs to conduct to understand the scope and develop a targeted solution for each setup. We'll let you know as soon as we have an update to share.[20]

79.     Plaintiffs and the other Class members have not received the soundbar they believed they were purchasing.

80.     Plaintiffs and the other Class members did not get what they paid for and are entitled to relief.

---

[20]     *See supra*, n.8.

## CLASS ACTION ALLEGATIONS

81.    Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

82.    Plaintiffs seek to represent the following Classes:

> All persons who purchased a Sonos Arc in the United States (the "Nationwide Class").
>
> All persons who purchased a Sonos Arc in the State of Alabama (the "Alabama Class")
>
> All persons who purchased a Sonos Arc in the State of Florida (the "Florida Class")
>
> All persons who purchased a Sonos Arc in the State of Illinois (the "Illinois Class").
>
> All persons who purchased a Sonos Arc in the State of Texas (the "Texas Class").

83.    Excluded from the Classes are Defendant, and any of Defendant's members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

84.    This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

85.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The members of the Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable. While Plaintiffs are informed and believe that there are thousands of Class members, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Sonos's and other retailers' sales records. Class

Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

86.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a)    whether Sonos engaged in the conduct alleged herein;

b)    whether Sonos's alleged conduct violates applicable law;

c)    whether Sonos designed, advertised, marketed, distributed, sold, or otherwise placed the Arc into the stream of commerce in the United States;

d)    whether Sonos misled Class members about the quality of the Arc device and its ability to support Dolby Atmos on all applications;

e)    whether the Arc suffers from a defect causing the Pop of Death;

f)    whether Sonos had actual or imputed knowledge about the alleged defect but failed to disclose it to Plaintiffs and the other Class members;

g)    whether Sonos's omissions and concealment regarding the quality of the Sonos device was deceptive in violation of state consumer protection laws;

h)    whether Class members overpaid for their Arc as a result of the defect alleged herein;

i)    whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

j)    the amount and nature of relief to be awarded to Plaintiffs and the other Class members.

87.  **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and each of the other Class members purchased the defective Arc. Neither the Plaintiffs nor the other Class members would have purchased the Arc, or they would have paid less for it, had they known of the Pop of Death defect. Plaintiffs and the other Class members suffered damages as a direct proximate result of the same wrongful practices in which Sonos engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the other Class members' claims.

88.  **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes that they respectively seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

89.  **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Sonos has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole.

90.  **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Sonos, so it would be impracticable for the Class members to individually seek redress for Sonos's wrongful conduct. Even if the Class members could afford litigation the court system could not.

Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

**A.    Claims Brought on Behalf of the Nationwide Class**

### COUNT 1

**Violation of the Magnuson-Moss Warranty Act
15 U.S.C. §§2301, *et seq.***

91.    Plaintiffs incorporate by reference each allegation in paragraphs 1-90 as if fully set forth herein.

92.    Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this claim).

93.    This Court has jurisdiction to decide these claims brought under 15 U.S.C. §2301 by virtue of 28 U.S.C. §1332(a) and (d).

94.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(3).

95.    Sonos is a "supplier" and "warrantor" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. §2301(4)-(5).

96.    The Arcs are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(1).

97.    15 U.S.C. §2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

98.    Sonos impliedly warranted that the Arcs were in a merchantable condition when sold or any time thereafter and fit for the ordinary purposes for which such goods are used.

99.    Sonos's implied warranty of merchantability is an implied warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(7).

100.    With respect to Class members' purchases of the Arcs, Sonos's implied warranty became part of the basis of the bargain between Sonos, on the one hand, and Plaintiffs and each of the other Class members, on the other.

101.    Sonos breached this warranty as described in more detail above.

102.    At the time of sale of each Arc, Sonos knew, should have known, or was reckless in not knowing of the Arcs' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs and the other Class members resort to an informal dispute resolution procedure and/or afford Sonos a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

103.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy in this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims involved in this lawsuit.

104.    As a direct and proximate result of Sonos's breaches of its implied warranty of merchantability, Plaintiffs and the other Class members have sustained damages in an amount to be determined at trial.

105.    Plaintiffs, individually and on behalf of all the other Class members, seek all damages permitted by law, including the diminution in value of their Arcs, in an amount to be proven at trial.

Class Action Complaint

**B.    Claims Brought on Behalf of the Alabama Class**

<u>COUNT 2</u>

**Fraudulent Concealment**

106.    Plaintiff Scott Fowler ("Plaintiff," for the purposes of the Alabama Class's claims) incorporates by reference each allegation in paragraphs 1-90 as if fully set forth herein.

107.    Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this claim).

108.    Sonos was aware of the Pop of Death defect when it marketed and sold the Sonos Arc to Plaintiff and the other Class members.

109.    Having been aware of the Pop of Death defect, and having known that Plaintiff and the other Class members could not have reasonably expected to know of this defect, Sonos had a duty to disclose the defect to Plaintiff and the other Class members in connection with the sale of the Arc.

110.    Further, Sonos had a duty to disclose the Pop of Death defect because such disclosure was necessary to dispel misleading impressions about the Arc's reliability, quality, and capabilities that were or might have been created by partial representation of the facts. Specifically, Sonos promoted, through advertisements available to all Class members, that the Sonos Arc was a top-of-the-line, cutting-edge soundbar capable of producing cinematic-quality Dolby Atmos sound. Sonos did not disclose, however, the Pop of Death, an inherent defect that contradicted its claims about the device's capabilities that would be material to any purchaser.

111.    Sonos did not disclose the Pop of Death defect in connection with the sale of the Arc.

112.    For the reasons set forth above, the Pop of Death defect comprises material information with respect to the sale of the Sonos Arc.

113.    In purchasing the Sonos Arc, Plaintiff and the other Class members, reasonably relied on Sonos to disclose known material defects with respect to the device. Had Plaintiff and the other Class members known of the Pop of Death defect, they would not have purchased their Arcs, or they would have paid substantially less for them.

114.    Through its omissions regarding the defect within the Arc, Sonos intended to induce, and did induce, Plaintiff and the other Class members to purchase soundbars that they otherwise would not have purchased, or to pay more than they otherwise would have if fully informed.

115.    As a direct and proximate result of Sonos's omissions, Plaintiff and the other Class members either paid too much for the Arc, or they would not have purchased the Arc at all if the Pop of Death defect had been disclosed to them, and, therefore, they have incurred damages in an amount to be determined at trial.

## <u>COUNT 3</u>

### Unjust Enrichment

116.    Plaintiff Scott Fowler ("Plaintiff," for the purposes of the Alabama Class's claims) incorporates by reference each allegation in paragraphs 1-90 as if fully set forth herein.

117.    Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this claim).

118.    Sonos has benefitted from selling at an unjust profit defective Arcs that had artificially inflated prices due to Sonos's concealment of the Pop of Death defect, and Plaintiff and the other Class members have therefore overpaid for these Arcs.

119.    Sonos has received and retained unjust benefits from Plaintiff and the other Class members, and inequity has resulted.

120.    It is inequitable and unconscionable for Sonos to retain these benefits.

121.   Because Sonos concealed its fraud and deception, Plaintiff and the other Class members were not aware of the true facts concerning the Arc and did not benefit from Sonos's misconduct.

122.   Sonos knowingly accepted the unjust benefits of its wrongful conduct.

123.   As a result of Sonos's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class members in an amount to be proven at trial.

**C.   Claims Brought on Behalf of the Florida Class**

### COUNT 4

**Violation of the Florida Deceptive Practices and Unfair Trade Practices Act Fla. Stat. §§501.201, *et seq.***

124.   Plaintiff Scott Somers ("Plaintiff," for purposes of the Florida Class's claims) incorporates by reference each allegation in paragraphs 1-90 as if fully set forth herein.

125.   Plaintiff brings this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this claim).

126.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204.

127.   By the conduct described in detail above and incorporated herein, Sonos engaged in unfair or deceptive acts in violation of FDUTPA. Sonos's omissions regarding the Pop of Death, described above, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) an Arc.

128.   Sonos's omissions regarding the Pop of Death defect were likely to deceive a consumer acting reasonably in the same circumstances as Plaintiff and the other Class members.

129.   Sonos intended for Plaintiff and the other Class members to rely on Sonos's omissions of fact regarding the Pop of Death defect.

130.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon Sonos's omissions of fact concerning the above-described defect, as evidenced by Plaintiff's and the other Class members' purchase of their Arcs.

131.   Had Sonos disclosed all material information regarding the Pop of Death defect to Plaintiff and the other Class members, then they would not have purchased their Arcs or would have paid less for them.

132.   Sonos's omissions deceived Plaintiff and the other Class members.

133.   Sonos acted willfully in not disclosing the Pop of Death defect from Plaintiff and the other Class members.

134.   Plaintiff and the other Class members suffered ascertainable loss and actual damages as a direct result of Sonos's failure to disclose the Pop of Death defect.

135.   Plaintiff and the other Class members who purchased their Arcs would not have done so, or would have paid significantly less, if the true nature of the Arc had been disclosed.

136.   Sonos's violations present a continuing risk to Plaintiff and the Class, as well as to the general public.

137.   Sonos's unlawful acts and practices complained of herein affect the public interest.

138.   Plaintiff, individually and on behalf of the other Class members, seeks an award of compensatory damages, punitive damages, reasonable attorneys' fees pursuant to Fla. Stat. §501.201, *et seq.*, costs, interest, and any other just and proper relief available under the FDUTPA.

Class Action Complaint

**COUNT 5**

**Fraudulent Concealment**

139.   Plaintiff Scott Somers ("Plaintiff," for purposes of the Florida Class's claims) incorporates by reference each allegation in paragraphs 1-90 as if fully set forth herein.

140.   Plaintiff brings this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this claim).

141.   Sonos was aware of the Pop of Death defect when it marketed and sold the Arc to Plaintiff and the other Class members.

142.   Having been aware of the Pop of Death, and having known that Plaintiff and the other Class members could not have reasonably been expected to know of this defect, Sonos had a duty to disclose the defect to Plaintiff and the other Class members in connection with the sale of the Arc.

143.   Further, Sonos had a duty to disclose the Pop of Death defect because such disclosure was necessary to dispel misleading impressions about the product's performance and capabilities that were or might have been created by partial representation of the facts.

144.   Specifically, Sonos promoted, through its advertisements available to all Class members, that the Arc contained cutting-edge hardware compatible with Dolby Atmos.

145.   Sonos did not disclose the Pop of Death defect to Plaintiff and the other Class members in connection with the sale of the Arc.

146.   For the reasons set forth above, the Pop of Death comprises material information with respect to the Arc.

147.   In purchasing the Arc, Plaintiff and the other Class members reasonably relied on Sonos to disclose known material defects with respect to the Arc.

148.   Had Plaintiff and the other Class members known of the Pop of Death defect, they would have not purchased the Arc or they would have paid substantially less for it.

149.   Through its omissions regarding the Pop of Death, Sonos intended to induce, and did induce, Plaintiff and the other Class members to purchase the Arc, a device that they otherwise would not have purchased, or would have paid less for.

150.   As a direct and proximate result of Sonos's omissions, Plaintiff and the other Class members either paid too much for the Arc, or they made a purchase that they otherwise would not have made if fully informed.

151.   They have, therefore, incurred damages in an amount to be determined at trial.

## COUNT 6

### Unjust Enrichment

152.   Plaintiff Scott Somers ("Plaintiff," for purposes of the Florida Class's claims) incorporates by reference each allegation in paragraphs 1-90 as if fully set forth herein.

153.   Plaintiff brings this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this claim).

154.   Sonos has benefitted from selling at an unjust profit defective Arcs at artificially inflated prices due to Sonos's concealment of the Pop of Death defect.

155.   Plaintiff and the other Class members have, therefore, overpaid for their Arcs.

156.   Sonos has received and retained unjust benefits from Plaintiff and the other Class members, and inequity has resulted.

157.   It is inequitable and unconscionable for Sonos to retain these benefits.

158.   Because Sonos concealed its fraud and deception, Plaintiff and the other Class members were not aware of the true facts concerning the Arc.

159.  Plaintiff and the other Class members did not benefit from Sonos's misconduct.

160.  Sonos knowingly accepted the unjust benefits of its wrongful conduct.

161.  As a result of Sonos's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class members in an amount to be proven at trial.

**D.    Claims Brought on Behalf of the Illinois Class**

## <u>COUNT 7</u>

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 Ill. Comp. Stat. 505/1, *et seq.***

162.  Plaintiff James Connolly ("Plaintiff," for purposes of the Illinois Class's claims) repeats and realleges paragraphs 1-90 as if fully set forth herein.

163.  Plaintiff brings this Count individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this claim).

164.  Sonos is a "person" as that term is defined in 815 Ill. Comp. Stat. 505/1(c).

165.  Plaintiff and the Class members are "consumers" as that term is defined in 815 Ill. Comp. Stat. 505/1(e).

166.  The purpose of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Act," for the purposes of this claim) is to enjoin trade practices which confuse or deceive the consumer. The Act declares unlawful

> unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby.

815 Ill. Comp. Stat. 505/2.

167. The facts about the Pop of Death defect concealed by Sonos were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase an Arc. Had Plaintiff and the Class members known of the Pop of Death defect, they would not have purchased their Arcs, or they would have paid substantially less for them.

168. Sonos's conduct proximately caused injuries to Plaintiff and the Class members.

169. Plaintiff and the Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Sonos's conduct in that Plaintiff and the Class members overpaid for their Arcs and did not receive the benefit of their bargain, and their affected Arcs suffered a diminution in value. These injuries are the direct and natural consequence of Sonos's misrepresentations, fraud, deceptive practices, and omissions.

170. Sonos's violations present a continuing risk to Plaintiff and the Class members as well as to the general public. Sonos's unlawful acts and practices complained of herein affect the public interest.

171. Pursuant to 815 Ill. Comp. Stat. 505/10a(a), Plaintiff and the Class members seek monetary relief against Sonos in the amount of actual damages, as well as punitive damages.

172. Plaintiff and the Class members also seek attorney's fees, and any other just and proper relief available under the Act.

## COUNT 8

### Fraudulent Concealment

173. Plaintiff James Connolly ("Plaintiff," for purposes of the Illinois Class's claims) repeats and realleges paragraphs 1-90 as if fully set forth herein.

174. Plaintiff brings this Count individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this claim).

175.   Sonos was aware of the Pop of Death defect when it marketed and sold the Arc to Plaintiff and the other Class members.

176.   Having been aware of the Pop of Death, and having known that Plaintiff and the other Class members could not have reasonably been expected to know of this defect, Sonos had a duty to disclose the defect to Plaintiff and the other Class members in connection with the sale of the Arc.

177.   Further, Sonos had a duty to disclose the Pop of Death defect because such disclosure was necessary to dispel misleading impressions about the product's performance and capabilities that were or might have been created by partial representation of the facts.

178.   Specifically, Sonos promoted, through its advertisements available to all Class members, that the Arc contained cutting-edge hardware compatible with Dolby Atmos.

179.   Sonos did not disclose the Pop of Death defect to Plaintiff and the other Class members in connection with the sale of the Arc.

180.   For the reasons set forth above, the Pop of Death comprises material information with respect to the Arc.

181.   In purchasing the Arc, Plaintiff and the other Class members reasonably relied on Sonos to disclose known material defects with respect to the Arc.

182.   Had Plaintiff and the other Class members known of the Pop of Death defect, they would have not purchased the Arc or they would have paid substantially less for it.

183.   Through its omissions regarding the Pop of Death, Sonos intended to induce, and did induce, Plaintiff and the other Class members to purchase the Arc, a device that they otherwise would not have purchased, or would have paid less for.

184.    As a direct and proximate result of Sonos's omissions, Plaintiff and the other Class members either paid too much for the Arc, or they made a purchase that they otherwise would not have made if fully informed.

185.    They have, therefore, incurred damages in an amount to be determined at trial.

## **COUNT 9**

### **Unjust Enrichment**

186.    Plaintiff James Connolly ("Plaintiff," for purposes of the Illinois Class's claims) repeats and realleges paragraphs 1-90 as if fully set forth herein.

187.    Plaintiff brings this Count individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this claim).

188.    Sonos has benefitted from selling at an unjust profit defective Arcs at artificially inflated prices due to Sonos's concealment of the Pop of Death defect.

189.    Plaintiff and the other Class members have, therefore, overpaid for their Arcs.

190.    Sonos has received and retained unjust benefits from Plaintiff and the other Class members, and inequity has resulted.

191.    It is inequitable and unconscionable for Sonos to retain these benefits.

192.    Because Sonos concealed its fraud and deception, Plaintiff and the other Class members were not aware of the true facts concerning the Arc.

193.    Plaintiff and the other Class members did not benefit from Sonos's misconduct.

194.    Sonos knowingly accepted the unjust benefits of its wrongful conduct.

195.    As a result of Sonos's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class members in an amount to be proven at trial.

## E.    Claims Brought on Behalf of the Texas Class

### <u>COUNT 10</u>

### Breach of Implied Warranty of Merchantability
### Tex. Bus. & Com. Code §§2.314 and 2A.212

196.    Plaintiff Joe Webb ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-90 as if fully set forth herein.

197.    Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this claim).

198.    Sonos is and was at all relevant times a merchant with respect to consumer electronics under Tex. Bus. & Com. Code §§2.104 and 2A.103.

199.    Pursuant to Tex. Bus. & Com. Code §§2.314 and 2A.212, a warranty that the Arc was in merchantable condition was implied by law, and the Arc was bought and sold subject to an implied warranty of merchantability.

200.    The Arcs do not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which soundbars are ordinarily used. Specifically, the Arc suffers from the Pop of Death defect, described above, which subjects consumers to random, explosive popping noises.

201.    Sonos was provided notice of the Pop of Death through numerous complaints posted to its forums and community boards. Sonos has also acknowledged in communications with journalists that the defect exists.

202.    Notice has proven to be futile, however, as Sonos has continually failed to provide an adequate remedy for the Plaintiff and Class members.

203.    As a direct and proximate result of the Pop of Death, Plaintiff has not appreciated the benefit of his bargain and has suffered actual damages, as well as incidental and consequential damages, in an amount to be determined at trial.

## COUNT 11

### Fraudulent Concealment

204.   Plaintiff Joe Webb ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-90 as if fully set forth herein.

205.   Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this claim).

206.   Sonos was aware of the Pop of Death defect within the Arc when it marketed and sold the Arc to Plaintiff and the other Class members.

207.   Having been aware of the Pop of Death defect and having known that Plaintiff and the other Class members could not have reasonably been expected to know of the defect, Sonos had a duty to disclose the defect to Plaintiff and the other Class members in connection with the sale of the Arc.

208.   Sonos did not disclose the Pop of Death defect to the Plaintiff and the other Class members in connection with the sale of the Arc.

209.   For the reasons set forth above, the Pop of Death defect comprises material information with respect to the sale of the Arc

210.   In purchasing the Arc, Plaintiff and the other Class members reasonably relied on Sonos to disclose known material defects with respect to the Arc.

211.   Had Plaintiff and the other Class members known of the Pop of Death defect, they would have not purchased their Arcs, or would have paid less for them.

212.   Through its omissions regarding the Pop of Death, Sonos intended to induce, and did induce, Plaintiff and the other Class members to either purchase a soundbar that they otherwise would not have purchased, or pay more for a soundbar than they otherwise would have paid.

213.   As a direct and proximate result of Sonos's omissions, Plaintiff and the other Class members either overpaid for their Arcs or would not have purchased them at all if the Pop of Death had been duly disclosed to them.

214. They have therefore incurred damages in an amount to be determined at trial.

## COUNT 12

### Unjust Enrichment

215. Plaintiff Joe Webb ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-90 as if fully set forth herein.

216. Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this claim).

217. Sonos has benefitted from selling and leasing at an unjust profit defective Arcs that had artificially inflated prices due to Sonos's concealment of Pop of Death defect, and Plaintiff and the other Class members have overpaid for these soundbars.

218. Sonos has received and retained unjust benefits from Plaintiff and the other Class members, and inequity has resulted.

219. It is inequitable and unconscionable for Sonos to retain these benefits.

220. Because Sonos concealed its fraud and deception, Plaintiff and the other Class members were not aware of the true facts concerning the defective Arc and did not benefit from Sonos's misconduct.

221. Sonos knowingly accepted the unjust benefits of its wrongful conduct.

222. As a result of Sonos's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class members in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against Defendant, Sonos, Inc., as follows:

A. Declaring that this action is a proper class action, certifying the Nationwide and statewide classes as requested herein, designating

1    Plaintiffs as Class Representatives of the classes that they respectively

2    seek to represent, and appointing Plaintiffs' attorneys as Class Counsel;

3    B.    Ordering Sonos to pay actual and statutory damages (including punitive

4          damages) and restitution by way of judgment to Plaintiffs and the other

5          Class members, as allowable by law;

6    C.    Ordering Sonos to pay both pre- and post-judgment interest on any

7          amounts awarded;

8    D.    Enjoining Sonos from further deceptive sales practices with respect to the

9          Arcs;

10   E.    Ordering Sonos to permanently repair the Arcs, within a reasonable time

11         period and at no cost to Class members, so that they no longer possess the

12         Pop of Death defect;

13   F.    Ordering Sonos to pay attorneys' fees and costs of suit; and

14   G.    Ordering such other and further relief as may be just and proper.

15                              **JURY DEMAND**

16   Plaintiffs hereby demand a trial by jury on all issues so triable.

17   Dated:   October 5, 2023                Respectfully submitted,

18

19                                            s/ *Steven M. Jodlowski*
                                             Steven M. Jodlowski (Bar No. 239074)
20                                           **DICELLO LEVITT LLP**
                                             4747 Executive Drive, Suite 240
21                                           San Diego, California 92121
                                             Tel.: 619-923-3939
22                                           stevej@dicellolevitt.com

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Adam J. Levitt*
John E. Tangren*
Jeremy Levine-Drizin*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
jlevinedrizin@dicellolevitt.com

*Counsel for Plaintiffs and the Proposed Classes*

* *Pro hac vice* motions to be filed

Class Action Complaint