1  KENDALL BRILL & KELLY LLP
   Laura W. Brill (195889)
2    *lbrill@kbkfirm.com*
   Nary Kim (293639)
3    *nkim@kbkfirm.com*
   David T. Freenock (332239)
4    *dfreenock@kbkfirm.com*
   10100 Santa Monica Blvd., Suite 1725
5  Los Angeles, California 90067
   Telephone: 310.556.2700
6  Facsimile:  310.556.2705

7  Attorneys for Defendant Sonos, Inc.

8

9              **UNITED STATES DISTRICT COURT**

10    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

| | |
|---|---|
| 12  SCOTT FOWLER, SCOTT SOMERS, JAMES CONNOLLY, and JOE WEBB, individually and on behalf of all others similarly situated, | Case No. 2:23-cv-08387-TJH-JPR |
| 13 | **NOTICE OF MOTION AND MOTION OF DEFENDANT SONOS, INC. TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 14 | |
| 15              Plaintiffs, | |
| 16      v. | |
| 17  SONOS, INC., | *Filed concurrently with Declarations of Nary Kim, John-Paul Beeghly, Katharine Schlesinger, and David Moreira; and [Proposed] Order* |
| 18              Defendant. | |
| 19 | Date:    January 8, 2024 |
| 20 | Time:    UNDER SUBMISSION |
| 21 | Dept.:    9C |
| | Judge:   Terry J. Hatter, Jr. |
| 22 | Action Filed:    October 5, 2023 |
| | Trial Date:    None |

23

24

25

26

27

28

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 8, 2024, or as soon thereafter as the matter may be heard, before the Honorable Terry J. Hatter, Jr. in Courtroom 9C on Floor 9 of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Defendant Sonos, Inc. will and hereby does move the Court for an order (1) compelling all of the claims by Plaintiffs into binding arbitration and (2) dismissing or staying the claims in favor of the arbitration proceedings.

This Motion is made following a series of conferences between counsel, pursuant to Local Rule 7-3, which took place by telephone on October 26, 2023 and November 10, 2023.

Sonos makes this Motion under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), and Federal Rule of Civil Procedure 12(b), on the basis of Plaintiffs' agreement to submit to individual arbitration all of the claims asserted in this case. This Motion is based on this Notice of Motion, the Declarations of Nary Kim, John-Paul Beeghly, Katharine Schlesinger, and David Moreira, the following Memorandum of Points and Authorities, the complete files and records in this action, any reply papers that Sonos may file, any matters of which the Court takes judicial notice, and such materials or argument as may be presented to the Court in conjunction with the hearing on this Motion.

DATED:  November 28, 2023          KENDALL BRILL & KELLY LLP


                                   By: _____
                                       Nary Kim
                                       Attorneys for Defendant Sonos, Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    BACKGROUND ........................................................................................ 2

    A.    Each Of The Plaintiffs Receives And Agrees To The Arbitration
           Agreement And Does Not Opt Out ............................................................. 2

    B.    The Complaint ............................................................................................ 7

II.   ARGUMENT............................................................................................... 7

    A.    Governing Standards ................................................................................. 7

    B.    The Delegation Clause Is Dispositive .................................................... 9

         1.    Contract Formation Is Beyond Dispute ....................................... 10

         2.    The Delegation Clause Is Valid .................................................... 13

               (a)    The Delegation Clause is clear and unmistakable............... 13

               (b)    The Delegation Clause is not unconscionable..................... 14

                     (i)    The Delegation Clause is not procedurally
                           unconscionable ........................................................ 16

                     (ii)   The Delegation Clause is not substantively
                           unconscionable ........................................................ 18

III.  This Action Should Be Dismissed Pursuant To Rule 12(b) Or, In The
     Alternative, Stayed Under The FAA .................................................... 19

IV.   CONCLUSION .......................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albrecht v. The Anthem Cos., Inc.*,
2019 WL 10746930 (C.D. Cal. Aug. 2, 2019) ............................................13, 14

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ...................................................................................15, 18

*B.D. v. Blizzard Ent't, Inc.*,
76 Cal. App. 5th 931 (2022) ...............................................................................11

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016) ......................................................................................15

*Berge v. Masanto*,
2020 WL 12948070 (S.D. Cal. Sept. 22, 2020) ................................................11

*Bernal v. Southwestern & Pac. Specialty Fin., Inc.*,
2014 WL 1868787 (N.D. Cal. May 7, 2014)........................................................9

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......................................................................15, 19

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ...................................................................9, 10, 14

*Carter v. Rent-A-Center, Inc.*,
718 Fed. App'x 502 (9th Cir. 2017) ...................................................................16

*Christian v. Pressed Juicery, Inc.*,
2021 WL 4771801 (C.D. Cal. Apr. 23, 2021) ....................................................11

*Cipolla v. Team Enters., LLC*,
810 Fed. App'x 562 (9th Cir. 2020) .....................................................................1

*Cir. City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) ............................................................................17

*Clayborne v. Lithia Motors, Inc.*,
2017 WL 6017009 (E.D. Cal. Dec. 5, 2017)......................................................19

*Eastburn v. CVS Pharmacy Inc.*,
2021 WL 4712713 (C.D. Cal. 2021) ..................................................................17

*Engalla v. Permanente Med. Grp.*,
  15 Cal. 4th 951 (1997) ......................................................................... 16

*Estrella v. Freedom Fin. Network, LLC*,
  2010 WL 2231790 (N.D. Cal. June 2, 2010) ......................................... 9

*Evans v. PayPal, Inc.*,
  2023 WL 6058490 (9th Cir. Sept. 18, 2023) ........................................ 12

*Flora v. Prisma Labs, Inc.*,
  2023 WL 5061955 (N.D. Cal. Aug. 8, 2023) ........................................ 17

*Flores v. Coinbase, Inc.*,
  2023 WL 3564756 (C.D. Cal. Apr. 6, 2023) ................................... 12, 13

*Goldman v. Jack B. Kelley, LLC*,
  2017 WL 11634981 (C.D. Cal. Feb. 22, 2017) ..................................... 18

*Gramercy Inv. Tr. v. Lakemont Homes Nevada, Inc.*,
  198 Cal. App. 4th 903 (2011) ................................................................ 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ............................................................................ 9

*Heredia v. MTK Global Sports Mgmt., LLC*,
  2022 WL 17078897 (C.D. Cal. Sept. 6, 2022) ..................................... 19

*Holley-Gallegly v. TA Operating, LLC*,
  74 F.4th 997 (9th Cir. 2023) ................................................................ 14

*In Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003) ................................................................................ 8

*Jinya Franchise, Inc. v. Pam Grp., LLC*,
  2013 WL 12133688 (C.D. Cal. Aug. 1, 2013) ..................................... 19

*Kilgore v. KeyBank Nat. Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) ............................................................. 16

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) .............................................................................. 8

*Knapke v. PeopleConnect, Inc.*,
  38 F.4th 824 (9th Cir. 2022) .................................................................. 7

*Lakhan v. U.S. Sec. Assocs., Inc.,*
2019 WL 175043 (C.D. Cal. Jan. 11, 2019) ...................................................... 14

*Lomeli v. Midland Funding, LLC,*
2019 WL 4695279 (N.D. Cal. Sept. 26, 2019) ................................................ 15

*Malone v. Superior Court,*
226 Cal. App. 4th 1551 (2014) .......................................................................... 18

*Manfredi v. Vivint Solar Dev. LLC,*
2021 WL 8441831 (C.D. Cal. Sept. 24, 2021) ................................................... 1

*Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.,*
586 F.2d 143 (9th Cir. 1978) ............................................................................ 19

*McLeod v. Zero Gravity Mgmt.,*
2022 WL 18278622 (C.D. Cal. Dec. 6, 2022) .................................................. 10

*Mohamed v. Uber Techs., Inc.,*
848 F.3d 1201 (9th Cir. 2016) ..................................................................... 13, 16

*Ortiz v. Hobby Lobby Stores, Inc.,*
52 F. Supp. 3d 1070 (E.D. Cal. 2014) ............................................................. 20

*Perry v. MLB Advanced Media, L.P.,*
2018 WL 5861307 (C.D. Cal. May 30, 2018) ................................................. 16

*Poublon v. C.H. Robinson Co.,*
846 F.3d 1260 (9th Cir. 2017) .......................................................................... 15

*Ramirez v. LQ Mgmt., L.L.C.,*
2020 WL 2797285 (C.D. Cal. May 29, 2020) ................................................. 18

*Rent-A-Center, W., Inc. v. Jackson,*
561 U.S. 63 (2010) ............................................................................................ 14

*Salberg v. Massage Green Int'l Franchise Corp.,*
2016 WL 3667154 (S.D. Cal. July 11, 2016) .................................................. 19

*Sellers v. JustAnswer LLC,*
73 Cal. App. 5th 444 (2021) ....................................................................... 10, 11

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,*
368 F.3d 1053 (9th Cir. 2004) .......................................................................... 20

*United Broth. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*,
   94 F.3d 1308 (9th Cir. 1996) ................................................................. 9

*Villa v. Gruma Corp.*,
   2020 WL 433098 (E.D. Cal. Jan. 28, 2020) ....................................... 19

*Wagner v. Stratton Oakmont, Inc.*,
   83 F.3d 1046 (9th Cir. 1996) .............................................................. 20

*Washington Mut. Bank, FA v. Superior Court*,
   24 Cal. 4th 906 (2001) .................................................................. 8, 9

*Williams v. Eaze Solutions, Inc.*,
   417 F. Supp. 3d 1233 (N.D. Cal. 2019) ............................................. 11

**Statutes**

Federal Arbitration Act, 9 U.S.C., *et seq*..................................... 7, 8, 19, 20

**Rules**

Federal Rule of Civil Procedure 12(b)....................................... 1, 19, 20

**Treatises**

Restatement Second of Conflict of Laws .............................................. 8

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

This case cannot proceed in this Court.

Each of the four plaintiffs in this putative class action—Scott Fowler, Scott Somers, James Connolly, and Joe Webb (collectively, "Plaintiffs")—agreed to be bound by an Arbitration Agreement that requires them to arbitrate on an individual basis "all claims, disputes, or disagreements that may arise out of the interpretation or performance of the Agreement, which includes the Terms of Use and License and Warranty Agreement (including its formation, performance, and breach) or payments by or to Sonos, or that in any way relate to the provision or use of the Product(s) or Services, your relationship with Sonos, or any other dispute with Sonos."

The Arbitration Agreement contains a clear and unmistakable Delegation Clause, under which the parties agreed that an arbitrator—not this Court—"shall have exclusive authority" to resolve all threshold issues of arbitrability, including "the interpretation, applicability, enforceability or formation of the Agreement." The effect of the Delegation Clause is well-settled. It prohibits the Court from entertaining any arguments that the Arbitration Agreement *as a whole* is unenforceable for any reason and, at most, permits this Court to consider the far narrower question of whether the Delegation Clause *specifically* is unenforceable. *See Cipolla v. Team Enters., LLC*, 810 Fed. App'x 562, 563 (9th Cir. 2020) (vacating order denying arbitration for failure to consider effect of delegation clause); *Manfredi v. Vivint Solar Dev. LLC*, 2021 WL 8441831, at *3 (C.D. Cal. Sept. 24, 2021) ("[I]if a party does not challenge a delegation clause 'specifically,' the Court 'must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4….'"). As a result, the Court need not address any arbitrability issues at all. It simply should enforce the Delegation Clause.

Accordingly, Sonos requests that this Court compel arbitration and dismiss the Complaint, pursuant to its discretion to order dismissal under Federal Rule of Civil Procedure 12(b) and the FAA. Alternatively, Sonos requests the Court to order a stay of all proceedings pending resolution of the arbitration, as required by the FAA.

## I.   <u>BACKGROUND</u>

### A.   <u>Each Of The Plaintiffs Receives And Agrees To The Arbitration Agreement And Does Not Opt Out</u>

Sonos is a developer and manufacturer of wireless speakers and other audio products.  The Sonos Arc is its flagship sound bar.

In order to use the Sonos Arc, all prospective users of the Arc are required to set up the Arc through the Sonos Application.  *See* Declaration of John-Paul Beeghly ("Beeghly Decl.") at ¶¶ 8, 9.  Upon opening the Sonos Application to initiate the set-up process for the Arc, each user is prompted to click a button to review the Sonos "Terms of Use, License and Warranty Agreement" (the "User Agreement").  *Id.* at ¶ 10.  Upon clicking the button, the consumer is led to the following page:



This page functions as a scroll box, which requires the user to scroll through the entire length of the page, after which the button labeled "Accept" at the end of the page (which remains grayed out and unclickable until the user finishes scrolling down the

page) turns black, signifying that the button can now be clicked.  Beeghly Decl. at ¶¶ 12-13.  Before the user is able to scroll down to reach the "Accept" button and proceed with the set-up of the Arc, he will have to pass the following admonitions:

> **PLEASE REVIEW SECTION 13, TITLED 'DISPUTE RESOLUTION' CAREFULLY, AS IT SETS FORTH HOW THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION, AS WELL AS YOUR RIGHT TO OPT OUT OF SUCH PROVISION. IT IS IMPORTANT YOU READ THE TERMS OF THIS AGREEMENT BEFORE PURCHASING, DOWNLOADING, REGISTERING AND/OR OTHERWISE USING SONOS PRODUCTS AND/OR SERVICES.**

Beeghly Decl. at ¶ 14 (capitalization in original).

> By purchasing, downloading, registering and/or otherwise using Sonos Product and/or Services, … You signify Your agreement to be bound by terms of this Agreement.  If You do not agree to all these terms or cannot make such representations, do not purchase, download, register or otherwise use Sonos Product and/or Services.

*Id*. at ¶ 15.

Following these admonitions is a tab labeled "License and Warranty Agreement," which opens up into a scroll box in which the entire scrollable text of the User Agreement (including Section 13) can be reviewed.  Beeghly Decl. at ¶ 16. Section 13, subparagraph (b), titled "Mutual arbitration agreement," provides:

> You and Sonos agree that all claims, disputes, or disagreements that may arise out of the interpretation or performance of the Agreement, which includes the Terms of Use and License and Warranty Agreement (including its formation, performance, and breach) or payments by or to Sonos, or that in any way relate to the provision or use of the Product(s) or Services, your relationship with Sonos, or any other dispute with Sonos, shall be resolved exclusively through binding arbitration in accordance with this Section 13 (collectively, the 'Arbitration Agreement').  This includes claims that arose, were asserted, or involve facts occurring before the existence of this Arbitration Agreement or any prior agreement as well as claims that may arise after the termination of this Arbitration Agreement, in accordance with the notice and opt-out provisions set forth in Section 13's (j) and (k)).  This Arbitration Agreement is governed by the Federal Arbitration Act ('FAA') in all respects and evidences a transaction involving interstate commerce.  You and Sonos expressly agree that the FAA shall exclusively govern the interpretation and enforcement of this Arbitration Agreement.

Beeghly Decl., Ex. A (User Agreement) at § 13(b).  This Section 13 (the "Arbitration Agreement") also contains the following Delegation Clause:

Except as set forth in this Section 13(b), the arbitrator or arbitration body, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of the Agreement (including the Terms of Use and License and Warranty Agreement) and this Arbitration Agreement, including, but not limited to any claim that all or any part thereof are void or voidable, whether a claim is subject to arbitration, and any dispute regarding the payment of administrative or arbitrator fees (including the timing of such payments and remedies for nonpayment).

*Id.*, Ex. A at § 13(b).[1]

Subparagraph (j) of the Arbitration Agreement is dedicated to explaining the consumer's right to opt out of the Arbitration Agreement:

**IF YOU DO NOT WISH TO BE BOUND BY THE "ARBITRATION AGREEMENT" AS SET FORTH IN THIS "DISPUTE RESOLUTION" SECTION 13, THEN**: (1) you must notify Sonos in writing within thirty (30) days of the date that you purchased a single Sonos Product or otherwise become subject to this Arbitration Agreement (or any subsequent changes to the provisions of the section titled "Dispute Resolution"); (2) your written notification must be mailed to Sonos at 614 Chapala St., Santa Barbara, CA 93101, Attn: Legal Department or emailed to arb-opt-out@sonos.com and (3) your written notification must include (a) your name, (b) your address, (c) the date you purchased the product, if applicable and (d) a clear statement that you wish to opt out of this Arbitration Agreement. Sonos will continue to honor any valid opt outs if you opted out of arbitration in a prior version of the Agreement pursuant to the requirements set forth in that version. If you do not timely opt out of this Arbitration Agreement, such action shall constitute mutual acceptance of the terms of these 'Dispute Resolution' provisions by you and Sonos.

*Id.*, Ex. A at § 13(j) (boldface and capitalization in original).

After scrolling through this text and reaching the bottom of the screen, the user is required to click the "Accept" button (which, as noted above, changes from

---

[1] The excerpts of the Arbitration Agreement set forth in this Motion are taken from the Arbitration Agreement in effect since November 2022. The Arbitration Agreement that went into effect in November 2022 is the version that governs all of the claims in this case, for the reasons explained below. However, every version of the Sonos Arbitration Agreement previously in effect in 2020 and in May 2022 also included a delegation clause. Beeghly Decl., Ex. B (2020 User Agreement) at § 13 (the arbitrator shall decide any issue concerning the "INTERPRETATION, SCOPE, OR VALIDITY OF THIS AGREEMENT"); *id.*, Ex. C (May 2022 User Agreement) at § 13 (same).

unclickable gray to clickable black only after the scrolling is complete) to continue to
set up the Arc.  Beeghly Decl. at ¶ 23.  Right before the user clicks the "Accept"
button, he once again confirms, "By continuing, I accept the updated Terms of Use,
License and Warranty Agreement," as illustrated below:



Beeghly Decl. at ¶¶ 23-24.

No user from 2020 to the present day has been able to use the Arc without first
completing the above-described set-up process in the Sonos Application, including the
last step of affirmatively clicking the "Accept" button after review of the Arbitration
Agreement.  *Id*. at ¶¶ 26, 31.

Following acceptance of the Arbitration Agreement through the Sonos
Application, every consumer has a period of thirty days to decide whether he wants to
opt out.  If a consumer opts out of the Arbitration Agreement, that consumer's

information is updated in Sonos' electronic data management system to reflect his opted-out status. *See* Declaration of David Moreira ("Moreira Decl.") at ¶ 4.

Here, Sonos has confirmed that it has a record of (i) each of the four Plaintiffs' acceptance of the Arbitration Agreement; and (ii) each of the four Plaintiffs' declination to opt out. Specifically, its records reflect: (1) Mr. Fowler set up his Arc on the Sonos Application and accepted the terms of the User Agreement on or around February 11, 2023 (*see* Declaration of Katharine Schlesinger ["Schlesinger Decl."] at ¶ 7); (2) Mr. Somers set up his Arc on the Sonos Application and accepted the terms of the User Agreement on December 2, 2020 (*id*. at ¶ 8); (3) Mr. Connolly set up his Arc on the Sonos Application and accepted the terms of the User Agreement on October 26, 2021 (*id*. at ¶ 9); and (4) Mr. Webb set up his Arc on the Sonos Application and accepted the terms of the User Agreement on May 26, 2022. *Id*. at ¶ 10.

Unlike Mr. Fowler, who accepted the terms of the current User Agreement after it went into effect in November 2022, Messrs. Somers, Connolly, and Webb each originally set up their Arcs through the Sonos Application prior to November 2022, when an earlier iteration of the Arbitration Agreement was in effect. *See id*. at ¶¶ 8-11. Thus, after agreeing to the prior Arbitration Agreement in effect at the time of the initial set-up, each of these three Plaintiffs agreed to arbitrate again, more recently, under the Arbitration Agreement that is now in effect. After the current version went into effect in November 2022, each of Messrs. Somers, Connolly, and Webb was informed of the updates to the Arbitration Agreement through the Sonos Application, which alerted them to the new updates and required to review and "Accept" the terms of the updated Arbitration Agreement the next time they logged into the Sonos Application. *Id*. at ¶ 11; Beeghly Decl. at ¶¶ 34-36. As a result, all four Plaintiffs are bound to the same version of the Arbitration Agreement, which is the current version of the Arbitration Agreement in effect since November 2022.

Each of the four Plaintiffs had a thirty-day window from accepting the terms of the Arbitration Agreement during which he could revoke his acceptance. Moreira

1   Decl. at ¶ 5.  None of the Plaintiffs revoked their acceptance during any applicable
2   thirty-day period, or indicated a desire to opt out at any point thereafter.  *Id.* at ¶¶ 6-7.
3   Because Plaintiffs decided not to opt out of the Arbitration Agreement, each of their
4   respective profiles reflects that they agreed to the terms of the Agreement and did not
5   opt out.

6           **B.      The Complaint**

7           Plaintiffs filed this action on October 5, 2023.  The Complaint alleges that each
8   of the four Plaintiffs personally purchased and own the Arc, which Plaintiffs allegedly
9   regret buying because of a "popping" sound they hear when they use the Arc.  Dkt. No.
10  1 (Compl.) at ¶¶ 16, 18, 21, 23, 26, 29, 32, 34.  Based on this alleged defect, the
11  Complaint alleges claims for violations of the Magnuson-Moss Warranty Act and other
12  statutes, fraudulent concealment, and unjust enrichment.  *Id.* at ¶¶ 91-222.

13          Since the filing of the Complaint, Sonos has rolled out a new software release
14  that addresses the purported sound defect.  Declaration of Nary Kim at ¶ 7.  Plaintiffs'
15  counsel has been advised of the fix.  *Id.*

16  **II.    ARGUMENT**

17          **A.      Governing Standards**

18          The Sonos User Agreement contains two provisions relevant to determining the
19  applicable law for this Motion.

20          First, the parties expressly agreed in Section 13 of the User Agreement that:
21  "This Arbitration Agreement is governed by the Federal Arbitration Act ('FAA') in all
22  respects and evidences a transaction involving interstate commerce."  Beeghly Decl.,
23  Ex. A (User Agreement) § 13(b); *see also Knapke v. PeopleConnect, Inc.*, 38 F.4th
24  824, 830-31 (9th Cir. 2022) (explaining the FAA "governs the enforceability of
25  arbitration agreements in contracts involving interstate commerce").  The phrase
26  "involving commerce" in the FAA "signal[s] the broadest permissible exercise of
27  Congress' Commerce Clause power," which "may be exercised in individual cases
28  without showing any specific effect upon interstate commerce if in the aggregate the

1    economic activity in question would represent a general practice … subject to federal

2    control." *In Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (internal

3    citations and quotation marks omitted). Thus, there is no question that the FAA

4    governs this Motion.

5         Second, to the extent that state law governs any discrete issues pertinent to this

6    Motion, such as state-law contract defenses that Plaintiffs may attempt to raise, the

7    parties expressly agreed in Section 14 of the User Agreement that California law

8    would apply. Beeghly Decl., Ex. A (User Agreement) at § 14(b) ("This Agreement

9    shall be governed by the laws of the state of California and, without reference to its

10    conflict of law principles, except to the extent that any such law is inconsistent with

11    the Federal Arbitration Act, in which case the Federal Arbitration Act controls.").

12    Since the Plaintiffs here cite diversity as the basis for this Court's subject-matter

13    jurisdiction (Dkt. No. 1 at ¶ 11), the Court applies the choice-of-law rules of the forum

14    state—here, California—to determine the validity of this contractual choice-of-law

15    clause. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "To

16    determine the enforceability of contractual choice-of-law provisions, California courts

17    apply the principles set forth in the Restatement Second of Conflict of Laws, which

18    reflect a strong policy favoring enforcement of such provisions." *Gramercy Inv. Tr. v.*

19    *Lakemont Homes Nevada, Inc.*, 198 Cal. App. 4th 903, 909 (2011) (citing *Nedlloyd*

20    *Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465-466 (1992)). Under this approach,

21    the Court determines "(1) whether the chosen state has a substantial relationship to the

22    parties or their transaction, or (2) whether there is any other reasonable basis for the

23    parties' choice of law." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906,

24    916 (2001) (quoting *Nedlloyd*, 3 Cal. 4th at 466). If either test is met, "the parties'

25    choice generally will be enforced unless" the party asserting the law of a different state

26    "can establish both that the chosen law is contrary to a fundamental policy" of the

27    alternate state and that the alternate state "has a materially greater interest in the

28    determination of the particular issue." *Id.* at 917 (quoting *Nedlloyd*, 3 Cal. 4th at 466).

Here, the contractual choice-of-law is clearly enforceable.  By Plaintiffs' own admission, California has a substantial relationship to the parties because Sonos "is a California corporation with its corporate headquarters located in [California]."  Dkt. No. 1 (Compl.) at ¶ 12.  Thus, to the extent this Motion requires the application of any state-law principles, California law will apply.  *See, e.g.*, *Estrella v. Freedom Fin. Network, LLC*, 2010 WL 2231790, at *5 (N.D. Cal. June 2, 2010) (enforcing California choice-of-law clause where California had the requisite substantial relationship to the parties and the transaction because the defendant was headquartered in California and had its principal place of business in California).

## B.    <u>The Delegation Clause Is Dispositive</u>

The Court's analysis here begins and ends with the Delegation Clause.

"A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  The "delegation clause commits to the arbitrator nearly all challenges to an arbitration provision." *Id*.  Thus, "the Court's role is ***narrowed*** from deciding whether there is an applicable arbitration agreement to ***only*** deciding whether there is a valid delegation clause." *Bernal v. Southwestern & Pac. Specialty Fin., Inc*., 2014 WL 1868787, at *2 (N.D. Cal. May 7, 2014) (granting motion to compel arbitration and stay proceedings; emphases added).  Courts are otherwise "divested of their authority and an arbitrator will decide in the first instance whether a dispute is arbitrable." *United Broth. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc*., 94 F.3d 1308, 1310 (9th Cir. 1996) (affirming holding that arbitrator was required to decide, in the first instance, whether dispute was arbitrable); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, … a court possesses no power to decide the arbitrability issue.").

Due to the presence of the Delegation Clause in the Arbitration Agreement between Sonos and Plaintiffs, the Court's task here is simplified.  The only two questions for the Court to answer on this Motion are:  (1) was an agreement to arbitrate formed; and, if it was, then (2) does it contain a valid delegation clause.  *See Caremark, LLC*, 43 F.4th at 1030.  If the Court answers these questions in the affirmative, it has no choice but to enforce the Delegation Clause.

### 1. <u>Contract Formation Is Beyond Dispute</u>

In answering the first question of whether an arbitration agreement was formed between Sonos and Plaintiffs, "federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'"  *McLeod v. Zero Gravity Mgmt.*, 2022 WL 18278622, at *4 (C.D. Cal. Dec. 6, 2022) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Under California law, Plaintiffs' agreement to be bound by the Arbitration Agreement through the Sonos Application is bulletproof.  Each of the Plaintiffs here agreed to arbitrate through what courts have denominated as a "scrollwrap" agreement—that is, a type of online agreement that requires users to "scroll through the terms before checking a box or clicking a button to indicate their assent."  *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 470 (2021).  As explained above, before any of them could begin to use the Arc, each Plaintiff was required to set up the device through the Sonos Application.  Beeghly Decl. at ¶¶ 8, 9, 26, 31, 36.  In the Sonos Application, each Plaintiff was prompted with the requirement that he review the Sonos User Agreement and each was prevented from completing the set-up or using the Arc without clicking on the "View Terms of Use" button at the bottom of this page.  *Id*. at ¶ 10.  Upon clicking the button labeled "View Terms of Use," each Plaintiff was required to scroll through the terms of the User Agreement, including the Arbitration Agreement, in a scroll box before (i) confirming "[b]y continuing, I accept the updated Terms of Use, License and Warranty Agreement"; and then (ii) affirmatively clicking on the button at the end of the scroll box labeled:  "Accept."  *Id*. at ¶¶ 11-26.  Only

1   then could any of the Plaintiffs begin using the Sonos Arc.  *Id.* at ¶¶ 26, 31, 34-36.

2       "Scrollwrap" agreements just like this have been approved by California courts
3   as embodying the most reliable method of online contract formation.  *B.D. v. Blizzard*
4   *Ent't, Inc.*, 76 Cal. App. 5th 931, 946 (2022) ("The 'wrap' methods of online contract-
5   formation provide varying degrees of notice to users, with browsewrap providing the
6   least and scrollwrap providing the most.").  As such, California courts have "reached
7   consistent conclusions when evaluating the enforceability of agreements at either end
8   of the spectrum, generally finding scrollwrap and clickwrap agreements to be
9   enforceable."  *Id.* (quoting *Sellers*, 73 Cal. App. 5th at 946); *see also Sellers*, 73 Cal.
10  App. 5th at 470 (confirming "there should be little doubt scrollwrap agreements are
11  enforceable under California law because the consumer is given the contract, a
12  sufficient circumstance to place the consumer on inquiry notice of the contractual
13  terms").  Federal district courts in California, too, have consistently granted motions to
14  compel arbitration based on "scrollwrap" agreements (which are deemed the most
15  superior form of online contract formation, because the text of the terms are
16  reviewable in a scroll box without resort to a hyperlink); and based on "clickwrap"
17  agreements (which are the second-best form of online contract formation, because they
18  require the user to click on a hyperlink to view the terms instead of viewing them more
19  conveniently within a scroll box).  *See, e.g.*, *Berge v. Masanto*, 2020 WL 12948070, at
20  *4 (S.D. Cal. Sept. 22, 2020) (granting motion to compel arbitration; "California …
21  routinely enforce[s] clickwrap agreements."); *Christian v. Pressed Juicery, Inc.*, 2021
22  WL 4771801, at *3 (C.D. Cal. Apr. 23, 2021) (granting motion to compel arbitration
23  where "Plaintiff checked the boxes next to the terms and conditions which were
24  accompanied by conspicuous language informing her that checking the boxes signified
25  her assent to the agreements. As California federal courts routinely hold, this is
26  sufficient to manifest assent."); *Williams v. Eaze Solutions, Inc.*, 417 F. Supp. 3d 1233,
27  1237 (N.D. Cal. 2019) (compelling arbitration pursuant to a "clickwrap" agreement
28  formed through a mobile application where consumer clicked a box stating "I agree to

join in the following collectives, and consent to Eaze's Terms of Service…."); *Evans v. PayPal, Inc.*, 2023 WL 6058490, at *1 (9th Cir. Sept. 18, 2023) (affirming district court order granting motion to compel arbitration; "Under … California … law, mutual assent manifests when an internet user accepts this type of 'clickwrap' agreement.").

*Flores v. Coinbase, Inc.*, 2023 WL 3564756 (C.D. Cal. Apr. 6, 2023), is exactly on point.  There, a consumer sued Coinbase, an online cryptocurrency company, in court for violations of securities laws and other torts.  *Id*. at *1.  The plaintiff had originally set up an online account and accepted the Coinbase User Agreement in 2021.  *Id*.  After Coinbase updated the terms of its arbitration agreement in February 2022, it sent its consumers an e-mail message informing them of the coming updates. *Id*. at *3.  In addition, all Coinbase consumers who had not previously accepted the February 2022 User Agreement were required to do so the next that they logged into their Coinbase accounts.  *Id*.  In finding the plaintiff had assented to the February 2022 User Agreement, the district court there observed that the plaintiff had logged into his account, where he saw an announcement that Coinbase had updated the User Agreement; beneath the announcement was a "scroll-box containing the full text of the updated Agreement"; and the plaintiff was required to "affirmatively click[]" a "button" at the bottom of the page labeled "[a]ccept terms."  *Id*.  In finding that this amounted to acceptance of the February 2022 User Agreement, the court stated: "Here, [Defendant]'s process went a step further than the type of clickwrap contracts routinely upheld by placing the full text of the updated User Agreement before the user, rather than making the terms available only via hyperlink.  Such 'scrollwrap' agreements are consistently found to be enforceable in California."  *Id*. at *4.

So too here.  Just as in *Flores*, each one of the Plaintiffs here assented to the November 2022 User Agreement through the Sonos Application, by scrolling through the text in a scroll box and affirmatively clicking the prominent black button at the end of the screen, indicating their acceptance of the terms.  *See* pp. 2-7, *supra*.  This not only satisfied the requirements of a clickwrap agreement, but "went a step further" and

forced Plaintiffs to scroll through the contractual terms before they could click the button to "[a]ccept" and proceed with the set-up and use of their Arcs.  *See Flores*, 2023 WL 3564756, at *4.  Because a scrollwrap agreement like the Arbitration Agreement in this case is unassailable under California law, the first question of contract formation is beyond dispute.

### 2.   The Delegation Clause Is Valid

The second and last question for this Court to answer is whether the Delegation Clause in the Sonos Arbitration Agreement is valid.  A delegation clause is valid so long as two conditions are met: (1) the moving party establishes that the delegation clause is "clear and unmistakable"; and (2) the opposing party fails to show the delegation clause is invalid under state-law contract defenses like unconscionability. *Albrecht v. The Anthem Cos., Inc*., 2019 WL 10746930, at *1 (C.D. Cal. Aug. 2, 2019) (compelling arbitration where delegation clause was clear and unmistakable and not revocable under state contract defenses); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209-10 (9th Cir. 2016) (enforcing delegation clause that "clearly and unmistakably delegated the question of arbitrability to the arbitrator for all claims … and, in the absence of some other generally applicable contract defense").

### (a)   The Delegation Clause is clear and unmistakable

The language of the Delegation Clause in the Arbitration Agreement between each of the Plaintiffs and Sonos clearly and unmistakably delegates all questions of arbitrability to the arbitrator.  The Delegation Clause here provides as follows:  "[T]he arbitrator or arbitration body, and not any federal, state or local court or agency, ***shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of the Agreement*** (including the Terms of Use and License and Warranty Agreement) and this Arbitration Agreement, including, but not limited to any claim that all or any part thereof are void or voidable…."  Beeghly Decl., Ex. A (User Agreement) at § 13 (emphasis added). District courts in California have confirmed that virtually identical delegation clauses

"clearly and unmistakably" reserve questions of arbitrability for the arbitrator. *Albrecht*, 2019 WL 10746930, at *3 (so holding for delegation clause that stated: "Arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of [the Arbitration Policy], including but not limited to any claim that all or any part of this policy is void or voidable."); *Lakhan v. U.S. Sec. Assocs., Inc*., 2019 WL 175043, at *6 (C.D. Cal. Jan. 11, 2019) (so holding for delegation clause that stated:  "The Arbitrator, and not any federal or state court, shall have the exclusive authority to resolve any issue relating to the interpretation, formation or enforceability of this Agreement, or any issue relating to whether a Claim is subject to arbitration under this Agreement.").  Thus, the first condition to find the Delegation Clause valid is met.

### (b)   <u>The Delegation Clause is not unconscionable</u>

Nor is there any applicable state-law defense that Plaintiffs could establish in their opposition to invalidate the Delegation Clause.  When mounting a state-law challenge against a delegation clause, a plaintiff must "challenge[] the delegation clause *specifically*."  *Rent-A-Center*, 561 U.S. at 72 (emphasis added).  Challenges to the overall contract or to the arbitration provision as a whole are irrelevant.  *Id.* (reversing holding that court had authority to decide arbitrability because respondent failed to challenge the delegation clause in particular); *see also Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1001-1003 (9th Cir. 2023) (vacating district court order denying motion to compel arbitration and directing the district court to order the arbitrator decide the issue of arbitrability because "neither [challenge to the arbitration agreement] has any bearing on whether *the delegation of arbitrability to the arbitrator* would be unconscionable" (emphasis in original)); *Caremark, LLC*, 43 F.4th at 1034 (rejecting arguments directed to the enforceability arbitration provision as a whole; "[Plaintiff]'s argument here does not call into question the district court's authority to enforce the delegation clause—rather, it challenges the enforceability of the arbitration provision as a whole….   That challenge raises exactly the type of threshold

arbitrability issue that the parties have delegated to the arbitrator, and the district court was therefore correct not to decide it."); *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (affirming district court decision to dismiss claims in favor of arbitration because plaintiff did not challenge delegation clause specifically); *Lomeli v. Midland Funding, LLC*, 2019 WL 4695279, at *13 (N.D. Cal. Sept. 26, 2019) (granting motion to compel arbitration without "reach[ing] the question of whether the arbitration agreement contains a class action waiver precluding class arbitration of Plaintiff's class allegations" because that threshold "question is properly for the arbitrator to decide, pursuant to the Card Agreement's delegation of all claims regarding the 'application, enforceability, or interpretation of this Agreement and this arbitration provision' to the arbitrator").

"Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement to delegate arbitrability—the Delegation Provision—is itself unconscionable." *Brennan*, 796 F.3d at 1132. Unconscionability under California law "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000) (internal quotations marks and citations omitted). California courts apply a "sliding scale" to determine overall unconscionability: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable and vice versa." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1260 (9th Cir. 2017) (internal quotations and citations omitted). Thus, although procedural and substantive unconscionability must ***both*** be present for the contract to be declared unenforceable, "they need not be present to the same degree." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016) (quotations and citations omitted).

Plaintiffs have the burden of proving that the Delegation Clause here is both

procedurally and substantively unconscionable. *See Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 972 (1997) ("[A] party opposing the petition [to arbitrate] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense."). Plaintiffs cannot do so, under dispositive law, for the following reasons.

### (i)    The Delegation Clause is not procedurally unconscionable

Any attempt to show procedural unconscionability would be dead on arrival. Procedural unconscionability requires "evidence of undue surprise or oppression." *Perry v. MLB Advanced Media, L.P.*, 2018 WL 5861307, at *5 (C.D. Cal. May 30, 2018) (finding no procedural unconscionability existed where the "Arbitration Provision was accessible through the hyperlink that was located just below the 'Buy & Accept Terms' button, which Plaintiff was required to click to proceed with her purchase"). Here, any such contention of undue surprise or oppression is eliminated in its entirety due to the existence of the thirty-day opt-out right. The effect of an opt-out right is well-settled. Where, as here, an agreement to arbitrate contains a right to opt out, procedural unconscionability cannot exist, as a matter of law. *See Carter v. Rent-A-Center, Inc.*, 718 Fed. App'x 502, 505 (9th Cir. 2017) (affirming order compelling arbitration and finding of no procedural unconscionability; "The arbitration agreement sets forth a procedure for opting out of the arbitration agreement and states this option in prominent bold lettering near the top of the first page of the agreement. [Plaintiff] was thus free to do business with defendant … without being bound by the arbitration agreement."); *Mohamed*, 848 F.3d at 1211 (reversing district court denial of motion to compel arbitration because an arbitration agreement "is not adhesive if there is an opportunity to opt out of it … which supports our holding that the delegation provision is not unconscionable"); *Kilgore v. KeyBank Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (reversing district court denial of motion to compel arbitration where "[t]he arbitration clause allows students to reject arbitration within sixty days of signing the Note"); *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002)

1   (affirming district court order compelling arbitration and finding of no procedural

2   unconscionability where "[Plaintiff] was given ample opportunity [thirty days] to

3   investigate any provisions he did not understand before deciding whether to opt out of

4   [Defendant]'s arbitration program"); *Eastburn v. CVS Pharmacy Inc.*, 2021 WL

5   4712713, at *4 (C.D. Cal. 2021) (confirming that a thirty-day opt out period eliminates

6   potential for procedural unconscionability); *Flora v. Prisma Labs, Inc.*, 2023 WL

7   5061955, at *3 (N.D. Cal. Aug. 8, 2023) (confirming an opt-right right in a consumer

8   arbitration agreement eliminates any challenge of procedural unconscionability by

9   consumers, particularly since a "consumer is not apt to have … hesitation when

10  deciding whether to opt out of arbitration against a [technology] app").

11       The opt-out provision in the Sonos Arbitration Agreement appears prominently

12  in eye-catching, bold-faced, and capitalized font.  It states as follows:

13  **PLEASE   REVIEW   SECTION   13,   TITLED   "DISPUTE
    RESOLUTION" CAREFULLY, AS IT SETS FORTH HOW THIS
14  AGREEMENT IS SUBJECT TO BINDING ARBITRATION, AS
    WELL AS YOUR RIGHT TO OPT OUT OF SUCH PROVISION.
15  IT IS IMPORTANT YOU READ THE TERMS OF THIS
    AGREEMENT   BEFORE   PURCHASING,   DOWNLOADING,
16  REGISTERING   AND/OR   OTHERWISE   USING   SONOS
    PRODUCTS AND/OR SERVICES.**

17                                    . . .

18
    Right to opt-out of the Arbitration Agreement. **IF YOU DO NOT
19  WISH TO BE BOUND BY THE "ARBITRATION AGREEMENT"
    AS SET FORTH IN THIS "DISPUTE RESOLUTION" SECTION
20  13, THEN:**  (1) you must notify Sonos in writing within thirty (30)
    days of the date that you purchased a single Sonos Product or otherwise
21  become subject to this Arbitration Agreement (or any subsequent
    changes to the provisions of the section titled "Dispute Resolution");
22  (2) your written notification must be mailed to Sonos at 614 Chapala
    St., Santa Barbara, CA 93101, Attn: Legal Department or emailed to
23  arb-opt-out@sonos.com and (3) your written notification must include
    (a) your name, (b) your address, (c) the date you purchased the product,
24  if applicable and (d) a clear statement that you wish to opt out of this
    Arbitration Agreement. Sonos will continue to honor any valid opt outs
25  if you opted out of arbitration in a prior version of the Agreement
    pursuant to the requirements set forth in that version. If you do not
26  timely opt out of this Arbitration Agreement, such action shall
    constitute mutual acceptance of the terms of these "Dispute Resolution"
27  provisions by you and Sonos.

28

1  Beeghly Decl., Ex. A (User Agreement) at prelude & § 13(j).[2]

2      Because the Arbitration Agreement here contains an opt-out right, which

3  provided a thirty-day period to revoke their acceptance of the terms, Plaintiffs cannot

4  show procedural unconscionability.  It is as simple as that.  Moreover, in the absence

5  of procedural unconscionability, there can be no finding of unconscionability at all.

6          **(ii)    The Delegation Clause is not substantively**

7                  **unconscionable**

8      Even if Plaintiffs could conjure "some evidence of procedural

9  unconscionability," that still would not invalidate the delegation clause absent "a high

10  showing of substantive unconscionability."  *See Malone v. Superior Court*, 226 Cal.

11  App. 4th 1551, 1570 (2014).  Substantive unconscionability could exist only if the

12  substantive terms of the Delegation Clause are so "overly harsh" or "one-sided" as to

13  "shock the conscience."  *Goldman v. Jack B. Kelley, LLC*, 2017 WL 11634981, at *5

14  (C.D. Cal. Feb. 22, 2017).  The "paramount consideration" in evaluating substantive

15  fairness "is mutuality of the obligation to arbitrate."  *Ramirez v. LQ Mgmt., L.L.C*.,

16  2020 WL 2797285, at *4 (C.D. Cal. May 29, 2020) (citing *Nyulassy v. Lockheed*

17  *Martin Corp*., 120 Cal. App. 4th 1267, 1287 (2004)).  The quintessential example of

18  substantive unconscionability is an arbitration provision that "requires one contracting

19  party, but not the other, to arbitrate all claims arising out of the same transaction."

20  *Armendariz*, 24 Cal. 4th at 120.

21      Plainly, the Delegation Clause here is bilateral—it provides that the arbitrator

22  will decide all threshold questions of arbitrability, whether the claims are brought by

23  Sonos or brought by a consumer.  Beeghly Decl., Ex. A at § 13.  All of the substantive

24  elements of the Delegation Clause apply evenly to consumers and Sonos alike, and

25  favor neither party.  There is nothing in the substantive terms of the Delegation Clause

26  ————————————

27  [2] The prior iterations of the Arbitration Agreement, dated 2020 and May 2022, also
   provided consumers with the same opt-out right.  Beeghly Decl., Ex. B (2020 User
28  Agreement) at § 13; *id*., Ex. C (May 2022 User Agreement) at § 13.

that is not entirely mutual; and there is certainly nothing that is so appallingly one-sided as to "shock the conscience." The Delegation Clause is thus valid and enforceable and dispositive of this Motion. The Delegation Clause should be enforced and the case sent to an arbitrator who has the exclusive authority to decide any gateway issues concerning arbitrability, including all issues concerning the interpretation and enforceability of the parties' agreement to arbitrate.

### C. This Action Should Be Dismissed Pursuant To Rule 12(b) Or, In The Alternative, Stayed Under The FAA

Because "the threshold question of arbitrability is delegated to the arbitrator," the only question that remains is whether this Court will decide to "stay or dismiss" the claims pending resolution of the arbitration. *See Clayborne v. Lithia Motors, Inc.*, 2017 WL 6017009, at \*5 (E.D. Cal. Dec. 5, 2017). Although the FAA "provides for a stay pending compliance with a contractual arbitration clause … a request for a stay is not mandatory." *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978). Rather, under the FAA, "[w]hen arbitration is mandatory, courts have discretion to stay the case under 9 U.S.C. § 3 or dismiss the litigation entirely." *Heredia v. MTK Global Sports Mgmt., LLC*, 2022 WL 17078897, at \*3 (C.D. Cal. Sept. 6, 2022); *see also Brennan*, 796 F.3d at 1133-34 (affirming district court's order dismissing action in favor of arbitration "because it is for the arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question").

Likewise, "[w]hen all of a plaintiff's claims are subject to arbitration, a court may dismiss the complaint under Rule 12(b)(6)." *Jinya Franchise, Inc. v. Pam Grp., LLC*, 2013 WL 12133688, at \*10 (C.D. Cal. Aug. 1, 2013); *see also Villa v. Gruma Corp.*, 2020 WL 433098, at \*2 (E.D. Cal. Jan. 28, 2020) (dismissing action pursuant to court's "discretion to dismiss under Rule 12(b)(6) if it finds that all of the claims before it are arbitrable"); *Salberg v. Massage Green Int'l Franchise Corp.*, 2016 WL 3667154, at \*2-\*3 (S.D. Cal. July 11, 2016) (exercising discretion to dismiss pursuant to Rule 12(b)(6) "[s]ince Plaintiff's remaining individual claims are subject to

arbitration, the Court sees no utility in staying the litigation, and Defendant has not given the Court any reasons for doing so"); *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1089 (E.D. Cal. 2014) (exercising discretion to dismiss the claim pursuant to Rule 12(b)(6), instead of staying action, because the arbitration agreement encompassed all of the claims); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060-1061 (9th Cir. 2004) (district court did not err in dismissing claims subject to arbitration pursuant to Rule 12(b)(6) and noting that FAA allows but does not require a stay of court proceedings).  Here, where all of the claims filed by Plaintiffs are subject to binding arbitration, Sonos respectfully submits that dismissal is the appropriate outcome under either the FAA or Rule 12(b).

If this Court declines to exercise its discretion to dismiss the case, the FAA requires it to enter a stay of the judicial proceedings pending resolution of the claims subject to arbitration.  *See* 9 U.S.C. § 3 ("[T]he court … upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…."); *see also Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996) ("The Federal Arbitration Act requires a court to stay an action whenever the parties to the action have agreed in writing to submit their claims to arbitration.").

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Sonos respectfully requests that the Court compel arbitration of Plaintiffs' claims and dismiss these proceedings.

DATED:  November 28, 2023          KENDALL BRILL & KELLY LLP

By: _____
     Nary Kim
     Attorneys for Defendant Sonos, Inc.